UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDWARD LEE KEITH,

       Petitioner,

                                 CASE NO. 5:08-CV-12683
v.                            JUDGE JOHN CORBETT O'MEARA
                                 MAGISTRATE JUDGE PAUL J. KOMIVES

NICK LUDWICK,

       Respondent.
                           /

**REPORT AND RECOMMENDATION**

*Table of Contents*

I.    RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.   REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
      A.     *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
      B.     *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
      C.     *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
      D.     *Ineffective Assistance of Counsel (Claim I)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
            1.      *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
            2.      *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
      E.     *Sentencing Claims (Claim II)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
            1.      *Guidelines Scoring* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
            2.      *Proportionality* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
      F.     *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . 15
            1.      *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
            2.      *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
      G.     *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
III.  NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

\*     \*     \*     \*     \*

I.    RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus. If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

II.   REPORT:

A.    *Procedural History*

1.      Petitioner Edward Lee Keith is a state prisoner, currently confined at the St. Louis Correctional Facility in St. Louis, Michigan.

2.      On April 26, 2006, petitioner was convicted of voluntary manslaughter, MICH. COMP. LAWS § 750.321; felon in possession of a firearm, MICH. COMP. LAWS § 750.224f; and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a jury trial in the Wayne County Circuit Court. On May 26, 2006, he was sentenced to concurrent terms of 10-15 years' imprisonment on the manslaughter conviction and 3-5 years' imprisonment on the felon in possession conviction, and to a mandatory consecutive term of two years' imprisonment on the felony-firearm conviction.

3.      Petitioner filed a motion for evidentiary hearing and new trial in the trial court pursuant to MICH. CT. R. 6.431, raising the following claims:

> I.      DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL BECAUSE COUNSEL DID NOT INTERVIEW PERSONS WHO WERE PRESENT DURING THE "INCIDENT."
>
> II.     COUNSEL DID NOT QUESTION THE PROSECUTION'S EYEWITNESS ABOUT A BARGAIN HE HAD WITH THE PROSECUTION NOT TO BE PROSECUTED FOR POSSESSION OF NARCOTICS.

On December 11, 2006, the trial court denied petitioner's motions. *See People v. Keith*, No. 05-009463 (Wayne County, Mich., Cir. Ct. Dec. 11, 2006).

4.      Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

> I.      DEFENDANT WAS DENIED HIS CONSTITUTIONAL GUARANTEE OF EFFECTIVE ASSISTANCE OF COUNSEL.
>
> II.     THE LOWER COURT ABUSED ITS DISCRETION BY USING REASONS TO DEPART FROM THE SENTENCING GUIDELINES THAT DO NOT RISE TO THE LEVEL OF SUBSTANTIAL AND COMPELLING

AS REQUIRED BY LAW AND BY USING REASONS THAT ARE ALREADY TAKEN INTO ACCOUNT IN THE SCORING OF THE SENTENCING GUIDELINES AND THE LOWER COURT COMMITTED REVERSIBLE ERROR BY IMPOSING A SENTENCE WHICH VIOLATES THE RULE OF PROPORTIONALITY.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence. *See People v. Keith*, No. 270873, 2007 WL 2381260 (Mich. Ct. App. Aug. 21, 2008) (per curiam).[1]

5. Petitioner, proceeding *pro se*, sought leave to appeal these two issues to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Keith*, 480 Mich. 1035, 743 N.W.2d 563 (2008).

6. Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on June 23, 2008. As grounds for the writ of habeas corpus, he raises the two claims that he raised in the state courts.

7. Respondent filed his answer on January 16, 2009. He contends that petitioner's claims are without merit.

B. *Factual Background Underlying Petitioner's Conviction*

Petitioner's conviction arises from a shooting outside the home of his aunt in 2005. The evidence adduced at trial was accurately summarized by the Michigan Court of Appeals:

> Defendant's convictions arise from a shooting outside of defendant's aunt's Detroit home on August 11, 2005. Witnesses testified that on August 10, 2005, some unidentified individuals fired several gunshots toward the home of Jacqueline Davis, who is defendant's aunt. In response, on August 11, 2005, defendant, who is known as "Red," and a few of his associates, including Edward Wade and Ladelle Lee Roosevelt Studvent, went to Davis's house "to protect" it "just in case the guys came back." According to Studvent and Davis, defendant brought guns to Davis's house.

---

[1] Although denying petitioner relief on his claims, the court of appeals did remand the case to the trial court for completion of a sentencing information report departure evaluation. In denying petitioner's application for leave to appeal, the Michigan Supreme Court vacated this portion of the court of appeals's decision.

Davis and a neighbor, who lived directly across the street, testified that defendant and others fired the guns in the air and onto the ground.

Subsequently, the victim drove his car into the next-door driveway, got out of the car, walked over to one of the men in the group, and incorrectly referred to him as "Mo." None of the people knew the victim, and Davis indicated that the victim had no involvement with any neighborhood issues. According to Davis and Studvent, the victim then walked into the middle of the street and proclaimed to be God. The victim walked past three houses and allegedly threw rocks toward Davis's house but not intending to hit anyone. At that point, a man named "Little Red," who is a person other than defendant, got into the victim's car and backed it out of the driveway. The victim then walked back to his car, swung toward Little Red and missed, and Little Red struck him in the nose. Studvent testified that Little Red ran, the victim chased him, the two began fighting, and then five to six other men joined in beating the victim. Davis saw "a bunch of people stomping [the victim], jumping on his back stomping him." Studvent testified that defendant, who had the victim in a headlock, then shot the victim. Davis denied seeing the shooting.

A neighbor, who lived directly across the street from Davis, testified that she saw the victim get out of the car, walk down the street, and then start moving rapidly as eight to ten men from Davis's house started talking loudly, cussing, and chasing the victim. The neighbor did not see what occurred after the group caught the victim. She subsequently heard gunshots, saw people run toward Davis's house, and saw a person with a gun run to the side of Davis's house. She could not identify the shooter.

The police found the victim, who was missing his shirt and one shoe, in a lot across the street from Davis's house. The Wayne County deputy chief medical examiner testified that the victim died from a single gunshot wound in the chest. The police executed a search warrant at Davis's house and found a loaded semi-automatic 12-gauge shotgun, a loaded 44-Magnum, a loaded AK-47, and ammunition.

The defense argued that defendant was mistakenly identified as the shooter. In a statement made to the police, defendant denied shooting the victim. Defendant admitted that he brought an AK-47 and a 44-Magnum to Davis's house after it had been "shot up." Defendant admitted being at the scene of the brawl, but denied kicking the victim although others were stomping him. When asked the location of the 44-Magnum during the brawl, defendant stated, "I guess on the porch or outside." Defendant claimed that a person named "Mark" shot the victim. A 19-year-old defense witness testified that Edward Wade pointed a revolver at the victim, who was "going crazy," and directed him to leave.

*Keith*, 2007 WL 2381260, at *1-*2, slip op. at 1-2.

C.  *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by

4

the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court]

5

precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.      *Ineffective Assistance of Counsel (Claim I)*

Petitioner first contends that his counsel was constitutionally ineffective for failing to properly investigate witnesses whose testimony would have shown that another person shot the victim and that the prosecution's key witness was lying about where petitioner was when the victim was shot. He also contends that counsel was ineffective for failing to question Studvent about a drug charge against Studvent that was dismissed by the prosecutor in exchange for his testimony against petitioner. The court should conclude that petitioner is not entitled to habeas relief on this claim.

1.      *Clearly Established Law*

The Sixth Amendment right to counsel and the corollary right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *See id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

With respect to the performance prong of the inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial

strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

2. *Analysis*

Petitioner contends that counsel was ineffective for failing to call witnesses who would have testified that petitioner did not shoot the victim and who would have shown that the prosecution's key witness was lying about where he was when the victim was shot. "Complaints of uncalled witnesses are not favored in federal habeas review." *Marler v. Blackburn*, 777 F.2d 1007, 1010 (5th Cir. 1985); *Aponte v. Scully*, 740 F. Supp. 153, 158 (E.D.N.Y. 1990). As one court has explained:

> The decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial. [Defendant] does not identify any witnesses that his counsel should have called who would have been helpful. Defense counsel's conduct in this regard appears to fall within the wide range of reasonable professional representation. Decisions whether to engage in cross examination, and if so to what extent and in what manner, are similarly strategic in nature.

*United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987); *accord Reese v. Fulcomer*, 946 F.2d 247, 257 (3d Cir. 1991) (counsel's performance not deficient where counsel did not call alibi witness whose testimony could have been damaging); *United States v. Porter*, 924 F.2d 395, 397 (1st Cir. 1991) (decision not to call witnesses who could have incriminated defendant within scope of informed professional judgment). Further, it is petitioner's burden to establish the elements of his ineffective assistance of counsel claim. *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995)

(petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same). Thus, "a petition for habeas corpus relief based on counsel's failure to call witnesses must present this evidence in the form of the actual testimony by the witness or affidavits." *United States ex rel. Townsend v. Young*, No. 01 C 0800, 2001 WL 910387, at *5 (N.D. Ill. Aug. 8, 2001) (citing *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991)); *see also*, *Harrison v. Quarterman*, 496 F.3d 419, 428 (5th Cir. 2007); *Dows v. Woods*, 211 F.3d 480, 486 (9th Cir. 2000).

Here, petitioner has not met his burden of establishing the elements of his ineffective assistance of counsel claim. Although petitioner contends that counsel should have interviewed and called witnesses to testify that he was not the shooter, petitioner has not identified the witnesses who he claims would have so testified. Nor has he provided any proof, by affidavit or otherwise, that any such witnesses would have been willing to testify at trial that he was not the shooter. As the court of appeals observed, petitioner simply "has not identified the witnesses, nor has he provided any proof that the proposed testimony of these unnamed witnesses would have actually been valuable to his defense." *Keith*, 2007 WL 2381260, at *3. Thus, the court of appeals's rejection of this claim was reasonable, and petitioner is not entitled to habeas relief.

Petitioner also contends that counsel was ineffective for failing to question Studvent about a deal dismissing narcotics charges against Studvent in exchange for his testimony. Again, petitioner has failed to meet his burden of showing that counsel was ineffective, because there is no evidence that any such deal existed. As the court of appeals explained:

> Defendant has failed to provide any record support for his claim that Studvent "struck" "a bargain" with the prosecution in exchange for his testimony. As noted by the trial court, defendant does not affirmatively state that any agreement was made, but only that the prosecutor did not question Studvent about an agreement.

9

> Moreover, in an affidavit, the prosecutor averred that "[t]here was no agreement" between the prosecution and Studvent. She further averred that she was unaware of any outstanding drug charge against Studvent. There is simply no evidence to support defendant's claim that the prosecution had an agreement with Studvent.

*Keith*, 2007 WL 2381260, at *3. Petitioner has presented no additional evidence here to suggest that an agreement between Studvent and the prosecutor actually existed, and thus the court of appeals's determination that counsel was not ineffective for failing to question Studvent on this matter was reasonable. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on his ineffective assistance of counsel claims.

E.  *Sentencing Claims (Claim II)*

Petitioner also contends that the trial court erred in sentencing him beyond the guidelines sentence, and that this error resulted in a disproportionate sentence. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.  *Guidelines Scoring*

A habeas petitioner's claim that the trial court violated state law when sentencing him is not cognizable in habeas corpus proceedings. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988); *Haynes v. Butler*, 825 F.2d 921, 924 (5th Cir. 1987). Federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). Petitioner's claim that the court improperly scored or departed from the guidelines range raises issues of state law that are not cognizable on habeas review. *See Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (Gadola, J.) (claim that sentencing court departed from Michigan sentencing guidelines presents an issue of state law only and is, thus, not cognizable in federal habeas review); *Welch v. Burke*, 49 F.

Supp. 2d 992, 1009 (E.D. Mich. 1999) (Cleland, J.) (same); *see also, Branan*, 851 F.2d at 1508 (claim that court misapplied state sentencing guidelines not cognizable on habeas review). Thus, petitioner is not entitled to habeas relief on his claims relating to the trial court's scoring of, or departure from, the Michigan sentencing guidelines.

      2.      *Proportionality*

Finally, petitioner suggests that his sentence is disproportionate to his offense. To the extent that petitioner relies on the Michigan proportionality rule established in *People v. Milbourn*, 435 Mich. 630, 461 N.W.2d 1 (1990), his claim is solely one of state law which is not cognizable on federal habeas review. *See Welch v. Burke*, 49 F. Supp. 2d 992, 1009 (E.D. Mich. 1999) (Cleland, J.). To the extent petitioner claims that his sentence violates the Eighth Amendment, the claim is without merit.

In *Solem v. Helm*, 463 U.S. 277 (1983), the Supreme Court held that the Eighth Amendment requires that "a criminal sentence be proportionate to the crime for which the defendant has been convicted." *Id.* at 290. In considering whether a sentence is proportionate, the Court identified three objective factors which are relevant: "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for the same crime in other jurisdictions." *Id.* at 292. Applying this test to the facts before it, the Court found that the defendant's sentence of life imprisonment without possibility of parole under a habitual offender statute was disproportionate where the three underlying felonies were nonviolent crimes involving small sums of money, the final felony being for uttering a false check. *See id.* at 303.

However, the reach of *Solem* has been limited by the Supreme Court's more recent decisions.

In *Harmelin v. Michigan*, 501 U.S. 957 (1991), the Court held that Michigan's mandatory sentence of life imprisonment for possession of over 650 grams of a controlled substance did not violate the Eighth Amendment. Justice Scalia, joined by Chief Justice Rehnquist, reasoned that *Solem* was wrongly decided and should be overruled, and concluded that the Eighth Amendment contains no proportionality requirement outside the capital punishment context. *See Harmelin*, 501 U.S. at 965 (Scalia, J.). Justice Kennedy, joined by Justices O'Connor and Souter, concluded that the Eighth Amendment contains a very narrow proportionality principle, which prohibits only those punishments which are 'grossly' disproportionate to the crime. *See id.* at 1001 (Kennedy, J.). Further, Justice Kennedy's opinion distinguished *Solem*, essentially limiting application of the *Solem* objective criteria test to the facts in that case. *See id.* at 1001-05. Specifically, Justice Kennedy concluded that the objective analysis required in *Solem* is "appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Id.* at 1005-06.[2] Thus, it is unclear whether, and to what extent, *Solem* remains good law. *See McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992) ("By applying a head-count analysis, we find that seven members of the Court supported a continued Eighth Amendment guaranty against disproportional sentences. Only four justices, however, supported the continued application of all three factors in *Solem*, and five justices rejected it. Thus, this much is clear: disproportionality survives; *Solem* does not.").

As the Sixth Circuit has summarized, under *Harmelin*, "although only two Justices [Rehnquist and Scalia] would have held that the eighth amendment has no proportionality

---

[2] Justices White, Blackmun, Stevens, and Marshall all concluded that *Solem* should be upheld, and the three factor test applied to the sentencing scheme at issue. *See Harmelin*, 501 U.S. at 1016 (White, J., dissenting).

12

requirement, five Justices [Kennedy, O'Connor, and Souter, along with Rehnquist and Scalia] agree that there is no requirement of strict proportionality." *United States v. Hopper*, 941 F.2d 419, 422 (6th Cir. 1991). At most, then, the Eighth Amendment "forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin*, 501 U.S. at 1001; *Hopper*, 941 F.2d at 422 ("the eighth amendment is offended only by an extreme disparity between crime and sentence"). Thus, as a general matter, "one could argue without fear of contradiction by any decision of the [Supreme] Court that for crimes concededly classified and classifiable as felonies, that is, as punishable by significant terms of imprisonment in a state penitentiary, the length of sentence actually imposed is purely a matter of legislative prerogative." *Rummel v. Estelle*, 445 U.S. 263, 274 (1980); *see Harmelin*, 501 U.S. at 962-65 (Scalia, J.); *id*. at 997-1001 (Kennedy, J.)

More recently, the Supreme Court again considered the proportionality issue under the Eighth Amendment, resulting in a split similar to that reached in *Harmelin*. In *Ewing v. California*, 538 U.S. 11 (2003), a three-justice plurality reaffirmed Justice Kennedy's approach in *Harmelin*, concluding that the Eighth Amendment contains a narrow proportionality principle which forbids sentences which are grossly disproportionate to the offense. *See id.* at 23-24 (opinion of O'Connor, J.) Justice O'Connor was joined in this position by Justice Kennedy, who had authored the plurality opinion in *Harmelin*, and by Chief Justice Rehnquist, who in *Harmelin* had joined Justice Scalia in concluding that the Eighth Amendment contains no proportionality requirement outside of the capital sentencing context. Justice Scalia, now joined by Justice Thomas (who was not on the Court when *Harmelin* was decided), reaffirmed his view that the Eighth Amendment contains no proportionality guaranty. *See id*. at 32 (opinion of Scalia, J.); *id*. at 32 (opinion of Thomas, J.). Justice Stevens likewise reaffirmed his view from *Harmelin* that the three-factor test of *Solem* guides

13

the proportionality inquiry under the Eighth Amendment. Justice Stevens was joined in this view by Justice Souter, who had joined the plurality opinion of Justice Kennedy in *Harmelin*, as well as by Justices Ginsburg and Breyer, who were not on the Court when *Harmelin* was decided. *See id.* at 33-35 (opinion of Stevens, J.); *id*. at 36-37 (opinion of Breyer, J.). Thus, although the particular Justices attached to each position have changed somewhat, the numbers and rationales in *Ewing* break down precisely as they did in *Harmelin*. Thus, for purposes of habeas review, the Sixth Circuit's analysis of *Harmelin*, in which this Court asks only whether the sentence is grossly disproportionate to the offense, *see Coleman v. DeWitt*, 282 F.3d 908, 915 (6th Cir. 2002); *United States v. Baker*, 197 F.3d 211, 217 (6th Cir. 1999), remains controlling under *Ewing*.

Here, the *Harmelin* plurality's "threshold comparison" of petitioner's crime and the sentence imposed, does not "lead to an inference of gross disproportionality," *Harmelin*, 501 U.S. at 1005, and thus the Court should conclude that petitioner is not entitled to habeas relief on this ground. Petitioner was sentenced to a term of 10-15 years' imprisonment for voluntary manslaughter. The evidence showed that a large group of men, including petitioner, savagely beat the victim and that petitioner then shot the victim. The evidence established petitioner's "superfluous, unjustifiable, and unwarranted attack on the victim, and [his] key role of bringing several loaded weapons to Davis's house to retaliate against others and then chasing down, beating, and shooting an uninterested and defenseless party." *Keith*, 2007 WL 2381260, at *5. In these circumstances, a sentence of 10-15 years' imprisonment was not so grossly disproportionate to the offense to create an inference of unconstitutionality. *See Ramos v. Weber*, 303 F.3d 934, 937-38 (8th Cir. 2002) (life imprisonment for first-degree manslaughter); *Coy v. Renico*, 414 F. Supp. 2d 744, 780 (E.D. Mich. 2006) (Rosen, J.) (20-30 sentence for voluntary manslaughter); *cf. Lockyer*, 538 U.S. at 73-77

(upholding sentence of 25 years' to life imprisonment for theft under recidivist statute); *Ewing*, 538 U.S. at 28-30 (same). Accordingly, petitioner is not entitled to habeas relief on this claim.

F.  *Recommendation Regarding Certificate of Appealability*

   1.  *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84. Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of

15

probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments. In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

2. *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's claims, the Court should also conclude that petitioner is not entitled to a certificate of appealability. As explained above, petitioner has failed to present any evidence to support his claim that witnesses existed who would have been willing and able to testify that he was not the shooter, or that Studvent testified in exchange for the prosecutor's agreement to dismiss charges against him. Thus, the resolution of petitioner's claim that counsel was ineffective for failing to call such witnesses is not reasonably debatable. Likewise, it is beyond dispute that petitioner's claim that trial court erred in departing from the sentencing guidelines does not raise a cognizable claim for habeas relief, and thus

the resolution of this claim is not reasonably debatable. Finally, in light of the facts of the killing and the *Harmelin* standard, the conclusion that petitioner's sentence was not constitutionally disproportionate to his offense is not reasonably debatable. Accordingly, the Court should conclude that petitioner is not entitled to a certificate of appealability.

G.      *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus. If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

III.    <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the

opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                        s/Paul J. Komives
                                        PAUL J. KOMIVES
                                        UNITED STATES MAGISTRATE JUDGE

Dated: 11/15/10

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and by electronic means or U.S. Mail on November 15, 2010.
>
>                        s/Eddrey Butts
>                        Case Manager